IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAUL D. JOHNSON, | 2:08-CV-01962-RRC |
| Plaintiff, | **ORDER DISMISSING SECOND AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM, WITH PREJUDICE** |
| vs. | |
| D.K. SISTO, et al., | |
| Defendants. | |

Paul D. Johnson, a state prisoner proceeding pro se, has filed a 42 U.S.C. § 1983 action. Plaintiff's Second Amended Complaint, liberally construed, alleges that Captain Nuehring and Sergeant Barocio, state employees at California State Prison (Solano), wrongly confined Plaintiff in the segregated housing unit ("SHU") beyond the expiration of the disciplinary term imposed by the prison's Institutional Classification Committee ("ICC"). Plaintiff fails to state a claim upon which relief may be granted. Because his complaint is composed of conclusory assertions unrelated to his SHU confinement and disconnected from the actions of Defendants, Plaintiff cannot establish the necessary elements of a § 1983 claim. Plaintiff's claim will be dismissed with prejudice in light of the two opportunities he has had to amend it and the futility of future amendments.

## I.   Legal Standard

The Court is required to screen complaints brought by prisoners seeking relief against a government entity or an officer or employee of a government entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b). Exhibits attached to the complaint may be considered in determining whether dismissal is proper. Parks Sch. of Bus., Inc. v. Symington, 51 F.3d 1480, 1484 (9th Cir. 1995).

In civil rights cases where the plaintiff is proceeding pro se, the Court reviews the pleadings liberally. King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987). The Court accepts all allegations of material fact as true and construes them in the light most favorable to the plaintiff. Barnett v. Centoni, 31 F.3d 813 (9th Cir. 1994). However, conclusory allegations are insufficient. Ove v. Gwinn, 264 F.3d 817, 821 (9th Cir. 2001). Furthermore, while Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only "a short and plain statement of the claim showing that the pleader is entitled to relief[,]" the pleadings need to "'give the defendant fair notice of what . . . the claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). If the Court decides that a pleading could be cured by the allegation of other facts, the pro se prisoner is entitled to an opportunity to amend his complaint before dismissal of the action. See, e.g., Karim-Panahi v. Los Angeles Police Dep't, 839 F.2d 621, 623 (9th Cir. 1988).

To make out a claim under 42 U.S.C. § 1983, a plaintiff must plead that (1) defendants acting under the color of state law (2) deprived him of rights secured by the U.S. Constitution or federal statutes. Gibson v. United States, 781 F.2d 1334, 1338 (9th Cir. 1986). Furthermore, "[l]iability under § 1983 arises only upon a showing of personal participation by the defendant. A supervisor is only liable for the constitutional violations of . . . subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them. There is no respondeat superior liability under section 1983." Taylor v. List, 880 F.2d 1040, 1045 (9th Cir.

1989) (internal citations omitted).

## II. Past Complaints and Orders

The complaint that the Court dismisses today is the third complaint Plaintiff has filed in this action. Despite two opportunities to amend his complaint and this Court's clear instructions about how to do so, Plaintiff has repeatedly failed to state a claim upon which relief may be granted.

Plaintiff's original complaint alleged that unspecified defendants failed to timely issue Plaintiff a CDC 114-D form before the expiration of his term of confinement in the SHU, explaining why he would not be released to the general population on that date. That complaint was dismissed without prejudice in an order instructing that any future complaint must tell the court (1) the "federal right Plaintiff believes was violated; (2) the name of the defendant who violated that right; (3) exactly what that defendant did or failed to do; (4) how the action or inaction of that defendant is connected to the violation of Plaintiff's right . . . ; and (5) what specific injury Plaintiff suffered because of the defendant's conduct." Docket No. 10, at 4. The order gave Plaintiff notice that if he "fail[ed] to affirmatively link the conduct of each named defendant with the specific injury suffered by Plaintiff, the allegation against that defendant w[ould] be dismissed for failure to state a claim." Id. Plaintiff was specifically warned that "[c]onclusory allegations that a defendant or group of defendants have violated a constitutional right are not acceptable and will be dismissed." Id.

Plaintiff's first amended complaint alleged, among other claims, that Captain Nuehring and Sergeant Barocio violated Plaintiff's Due Process rights by wrongly confining him in the SHU eight days beyond the expiration of the term imposed by the ICC, shifting the focus from the failure to issue a CDC 114-D form explaining the reason for the additional days to the fact of the additional days themselves. In dismissing that claim without prejudice, this Court warned Plaintiff that to survive dismissal, his second amended complaint would have to "allege facts demonstrating that his unearned SHU confinement constituted an atypical and significant hardship beyond 'the range of confinement to be normally expected by prison inmates in relation to the ordinary incidents of prison life.'" Docket No. 12, at 4–5 (quoting Resnick v. Warden Hayes, 213 F.3d 443, 444 (9th Cir. 2000)

(internal quotation marks omitted)). The order further advised Plaintiff that "a prisoner cannot establish a constitutionally protected liberty interest in avoiding disciplinary segregation where '(1) disciplinary segregation [is] essentially the same as discretionary forms of segregation; (2) a comparison between the plaintiff's confinement and conditions in the general population show[s] that the plaintiff suffered no 'major disruption in his environment'; and (3) the length of the plaintiff's sentence was not affected." Id. at 4 (quoting Resnick, 213 F.3d at 444 (internal quotation marks omitted)).

Plaintiff then filed the second amended complaint that is now before the Court.

### III. Wrongful Confinement in Segregated Housing Beyond the Term Imposed by ICC

Plaintiff's second amended complaint repeats the allegation that Defendants Nuehring and Barocio violated his Due Process rights by retaining Plaintiff in the SHU for eight days beyond the expiration of his August 10, 2007 Minimum Eligible Release Date ("MERD"). At his pre-MERD review, the ICC ordered Plaintiff released from the SHU to the general population effective August 10, 2007. See Original Complaint, Docket No. 1, Ex. C. Instead, Plaintiff was held in the SHU through August 18, 2007. See Id., Ex. E. Associate Warden V. Singh "partially granted" Plaintiff's administrative appeal, noting that he was "retained in [the SHU] from August 10, 2007, through August 18, 2007, through no fault of [his] own." Id.[1]

Once again, Plaintiff has failed to state a claim upon which relief may be granted because he has not adequately pleaded a state-created liberty interest in freedom from SHU confinement that is protected by the Fourteenth Amendment. "States may under certain circumstances create liberty

---

[1] The focus of Plaintiffs' prison grievance, like his original complaint, was the failure to provide him with a CDC 114-D form, not the additional eight days he was held in the SHU. It is not clear that Plaintiff exhausted his administrative remedies with regard to the eight days. Because I dismiss the complaint for failure to state a claim, however, I do not need to decide whether Johnson exhausted his administrative remedies. 42 U.S.C. § 1997e(c)(2). In addition, I note that the associate warden's response to the administrative appeal does not suggest that the defendants named in the Second Amended Complaint were personally responsible for the additional eight days, or that those eight days were caused by anything other than an inability to find appropriate housing elsewhere in the facility.

interests which are protected by the Due Process Clause," Sandin v. Conner, 515 U.S. 472, 483–84 (1995), but these state-created liberty interests are limited to "freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 484. Quoting this language from the Court's dismissal of his First Amended Complaint, Plaintiff asserts that his extra eight days of confinement in the SHU imposed on him an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life" to which he was belatedly returned. But plaintiff does not allege any particular hardship that substantiates this bald assertion.

"There is no single standard for determining whether a prison hardship is atypical and significant, and the 'condition or combination of conditions or factors . . . requires case by case, fact by fact consideration.'" Ramirez v. Galaza, 334 F.3d 850, 861 (9th Cir. 2003) (quoting Keenan v. Hall, 83 F.3d 1083, 1089 (9th Cir. 1996)). It is clear, however, that a prisoner cannot establish a constitutionally protected liberty interest in avoiding disciplinary segregation where "(1) disciplinary segregation [is] essentially the same as discretionary forms of segregation; (2) a comparison between the plaintiff's confinement and conditions in the general population show[s] that the plaintiff suffered no 'major disruption in his environment'; and (3) the length of the plaintiff's sentence was not affected." Resnick v. Warden Hayes, 213 F.3d 443, 444 (9th Cir. 2000) (citing Sandin, 515 U.S. at 486–87).

Plaintiff attempts no comparison between the conditions of confinement in the SHU and in the general population. He also fails to compare his disciplinary segregation with any discretionary forms of segregation at the prison. Finally, Plaintiff does not allege that his criminal sentence was lengthened as a result of his additional time in the SHU. See Resnick, 213 F.3d at 444. Because Plaintiff's complaint fails to describe any "atypical and significant hardship" that he suffered, despite this Court's explicit instructions and two opportunities to amend, I determine that Plaintiff cannot allege facts that would cure his pleading, and I dismiss his claim with prejudice.

Instead of asserting a specific hardship that he suffered as a result of his unearned confinement in SHU, Plaintiff alleges "added strain," and refers to what appears to be his complete

medical record, without identifying any particular document that substantiates that conclusory allegation. My independent review of his documents uncovers no such evidence. Rather, Plaintiff's records for the time he was in the SHU consistently indicate "no acute psychiatric distress" or suicidal ideation, and "no [inmate] complaints," almost without variation. See Docket No. 13.

Plaintiff's records indicate that he complained of pain in his left arm and numbness in his hand on April 28, 2007, long before the end of his SHU term, but he did not suggest that his pain was related to his SHU confinement (let alone from the additional eight days he spent in the SHU in August 2007) or caused by either Defendant. Plaintiff does not allege that he was denied treatment for that pain. To the contrary, his records indicate that he was evaluated and prescribed rest and finger exercises on May 16, 2007, while still in the SHU. Plaintiff also indicated distress on July 6, 2007, because educational materials he had ordered were not delivered to him in the SHU. But prison staff reported that Plaintiff appeared calmer when they explained to him that mail is more restricted in the SHU, and he would have easier access to the materials when he was released back to the general population.

Plaintiff's complaint mentions neither of these episodes, and his records indicate no distress or complaints thereafter, including the days he was held in the SHU beyond his ICC-imposed term and the weeks following. The only other detailed notation during the relevant time period indicates that on August 13, 2007, three days past the SHU release date set by the ICC, Plaintiff reported being "OK," "getting along," and not requiring medication for his pre-existing psychosis. Instead of substantiating Plaintiff's conclusory assertion of added strain, Plaintiff's medical records undermine his vague assertion that he suffered an atypical hardship in the SHU.

The Second Amended Complaint does allege that the failure of unnamed personnel to give Plaintiff "his full (teeth) plates" effected a "major disruption in his environment" by "causing Plaintiff to be unable to eat" and to "los[e] lots of weight." As frustrating as this must have been, Plaintiff's grievance does not satisfy the requirement of an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life," Sandin, 515 U.S. at 484, because it has nothing to do with his disciplinary segregation. Plaintiff does not allege that the delay he faced in getting his

dentures related in any way to his SHU confinement, much less that he would have received them sooner had he been released from the SHU on August 10. Furthermore, despite explicit instructions about alleging defendants' personal participation in the orders dismissing his first two complaints, see Docket No. 10, at 2–4; Docket No. 12, at 2, Plaintiff does not claim that this disruption was otherwise caused by either of the Defendants.

Plaintiff's attached documentation does no better: Neither his own written comments nor the corresponding staff responses make any mention of Plaintiff's segregated housing as a cause for the delay he experienced in receiving his dental plates. Plaintiff spent time on the prison's "denture wait list," and when his first relined dentures did not fit, he was scheduled for new impressions 19 days later. The only documents that mention his dentures are dated April 6, 2007, May 3, 2007, and May 29, 2007—well before the end of his SHU term. Plaintiff's delayed dental treatment is therefore unrelated to his unfounded allegation that the additional time Plaintiff spent in the SHU constituted an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484.

This Court has considered granting Plaintiff a fourth opportunity to plead a violation of his constitutional rights by these Defendants, but I determine that leave to amend in this case would disserve both "the public's interest in expeditious resolution of litigation" and "the court's need to manage its docket." Ferdik v. Bonzelet, 963 F.2d 1258, 1260–61 (9th Cir. 1992). I find no countervailing likelihood that further amendment would bring this case any nearer disposition on its merits. See id. In light of Plaintiff's failure in three successive complaints to state a claim on which relief may be granted, the specific instructions of this Court about how to do so, and the counterproductive effect of the evidence Plaintiff submitted with his last complaint, I determine that any further amendment would be futile.

**Conclusion**

For the foregoing reasons, Plaintiff's Second Amended Complaint will be dismissed with prejudice for failure to state a claim upon which relief can be granted.

Accordingly, IT IS HEREBY ORDERED that:

1. The Second Amended Complaint is <u>dismissed with prejudice</u> for failure to state a claim.

2. This dismissal counts as a "strike" under 28 U.S.C. § 1915(g).

DATED: July 26, 2010.

/s/ Richard R. Clifton
RICHARD R. CLIFTON
UNITED STATES CIRCUIT JUDGE